660 A.2d 1378

**Richard D. GENTZLER, II and Cardiovascular Associates of Lancaster, Ltd., Appellants,**

v.

**William A. ATLEE, Jr. and Atlee & Hall.**

Superior Court of Pennsylvania.

Argued Feb. 14, 1995.

Filed June 28, 1995.

---

William T. Hangley, Philadelphia, for appellants.

Stephanie Resnick, Philadelphia, for appellees.

Before WIEAND, BECK and BROSKY, JJ.

BECK, Judge:

We decide whether a physician has stated a cause of action for wrongful use of civil proceedings against a lawyer who, on behalf of an injured client, included the physician as a defendant in an underlying medical malpractice suit based on negligence and lack of informed consent. We conclude that plaintiffs-appellants Richard D. Gentzler, II, M.D. and Cardiovascular Associates of Lancaster, Ltd. (hereinafter referred to as "Gentzler") properly made out a claim of wrongful use of civil proceedings against defendants-appellees William A. At-

lee, Jr. and his law firm Atlee & Hall (hereinafter referred to as "Atlee"). We therefore reverse the trial court which sustained Atlee's preliminary objections in the nature of a demurrer and dismissed the complaint without leave to amend.

In reviewing this appeal from the grant of preliminary objections in the nature of a demurrer, we must accept as true every well-pleaded fact in Gentzler's complaint and all inferences reasonably deducible therefrom to decide whether Gentzler has stated a cognizable cause of action. *Kelly–Springfield Tire Co. v. D'Ambro,* 408 Pa.Super. 301, 596 A.2d 867 (1991); *Shaffer v. Stewart,* 326 Pa.Super. 135, 473 A.2d 1017, 1020 (1984); *Dietrich Ind., Inc. v. Abrams,* 309 Pa.Super. 202, 455 A.2d 119 (1982). If there is any doubt as to whether a claim for relief has been stated, that doubt should be resolved in favor of overruling the demurrer. *Creeger Brick & Building Supply, Inc. v. Mid–State Bank & Trust Co.,* 385 Pa.Super. 30, 560 A.2d 151 (1989). We must therefore review the factual averments of Gentzler's complaint to determine whether a cause of action against Atlee for wrongful use of civil proceedings has been stated. *Kelly–Springfield Tire Co. v. D'Ambro, supra,* 408 Pa.Super. 301, 596 A.2d 867.

The facts as alleged in Gentzler's complaint establish the following history. Atlee sued Gentzler on behalf of his client John Doe for negligence and lack of informed consent to a medical procedure. In that lawsuit, Atlee [1] alleged that Gent-

1. It appears from the record that John Doe did not verify either the complaint or amended complaint. Instead, Atlee signed the complaint on behalf of his client. Title 42 Pa.C.S. § 8355 (Purdon 1982) (Supp. 1995) provides:

... The signature of an attorney or party constitutes a certification by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information and belief, it is well-grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification or reversal of existing law; and that it is not interposed in bad faith or for any improper purpose, such as to harass another, to maliciously injure another or to cause unnecessary delay or increase in the cost of litigation.... If a pleading, motion or other paper is signed in violation of this section, the court shall award to the successful party costs and reasonable attorney fees and may, in addition, impose a civil penalty which shall not exceed $10,000 ...

zler, a cardiologist, caused Doe to contract HIV, the virus that causes Acquired Immune Deficiency Syndrome (AIDS).

From 1977 until 1991, Doe was a cardiology patient of Gentzler. In November 1990, Gentzler examined Doe and recommended that he enter the hospital for the performance of certain tests. These tests were performed at the Lancaster General Hospital; Gentzler did not attend or participate in the performance of these tests. Based on the results of the tests, Doe was admitted to the hospital for coronary artery bypass graft surgery and a combined left carotid endarterectomy. Gentzler did not recommend or participate in these surgical procedures. At some point during the surgery, blood products were administered to Doe which proved to be contaminated with HIV and as a result, Doe became infected with the virus.

Doe's surgeons, Dr. Edward F. Lundy and Dr. Richard Purdy, obtained written consents to the surgical procedures. However, Doe alleged that neither the surgeons nor Gentzler advised him of the risk of receiving blood products contaminated with HIV, nor did they mention or recommend to him that he had the option of autologous or directed donation [2] if transfusion of blood products became necessary during his treatment. Doe also asserted that the defendant doctors failed properly to screen the blood products. Doe claimed that these failures gave rise to a cause of action for negligence and lack of informed consent against all the defendants, including Gentzler.

Gentzler filed preliminary objections in the nature of a demurrer to the Doe complaint, which were sustained. The trial court, in dismissing the complaint against Gentzler, cited his rationale as follows:

42 Pa.C.S. § 8355.

**2.** Autologous donation refers to the procedure by which a patient may have his own blood withdrawn and banked for future use during a surgical procedure. Directed donation refers to the procedure by which a patient's family members and friends, who are known not to be HIV positive, may donate blood for use by the patient while undergoing surgical procedures.

> Plaintiffs acknowledge that Dr. Gentzler was not the surgeon performing the operation in this case. Plaintiffs further acknowledge that Dr. Gentzler did not, in fact, obtain consent for the surgery.... The central question with respect to Dr. Gentzler is whether it was he who performed the surgery. The answer is clearly that it was not Dr. Gentzler who performed the surgery. He is, therefore, under existing Pennsylvania law, not responsible for any harm which might have arisen from a lack of informed consent to the surgical procedure ... The negligence theory ... is inconsistent with the facts stated earlier in the complaint.... Plaintiffs plead no facts which would support a duty on Dr. Gentzler under the circumstances of this case.

The case against Gentzler was dismissed, and Doe did not file an appeal after the case was completed.

After the *Doe* case was terminated in favor of Gentzler, Gentzler filed this action for wrongful use of civil proceedings against Atlee pursuant to 42 Pa.C.S. § 8351 *et seq.* (the "Act"). The Act provides the elements of the cause of action:

> (a) Elements of action.—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
>
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.C.S. § 8351(a).

The Act requires that a plaintiff in the position of Gentzler, in order to carry his or her burden of proof, establish that:

> (1) The defendant has procured, initiated or continued the civil proceedings against him.
>
> (2) The proceedings were terminated in his favor.

(3) The defendant did not have probable cause for his action.

(4) The primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based.

(5) The plaintiff has suffered damages as set forth in section 8353 (relating to damages).[3]

42 Pa.C.S. § 8354; *Mi–Lor, Inc. v. DiPentino*, 439 Pa.Super. 636, 654 A.2d 1156, 1158 (1995) (assertion of valid defense in counterclaim was not wrongful use of civil proceedings). To withstand demurrer, the complaint must at least include the factual allegations required to carry this burden of proof. At this juncture, however, the questions of whether the facts alleged in Gentzler's complaint can be proved or whether Gentzler actually suffered any damages are not before us. We must simply decide whether Gentzler's allegations make out a cause of action under the applicable law. *Shaffer v. Stewart, supra,* 326 Pa.Super. 135, 473 A.2d 1017.

The first two requirements of the wrongful use statute are easily satisfied in this case. It is clear that Atlee initiated (and continued) civil proceedings against Gentzler. It is equally clear that the underlying action, the *Doe* lawsuit, was terminated in Gentzler's favor when preliminary objections in

---

**3.** Section 8353 of the Act authorizes recovery of damages as follows:

When the essential elements of an action brought pursuant to this subchapter have been established as provided in section 8351 (relating to wrongful use of civil proceedings), the plaintiff is entitled to recover for the following:

(1) The harm normally resulting from any arrest or imprisonment, or any dispossession or interference with the advantageous use of his land, chattels or other things, suffered by him during the course of the proceedings.

(2) The harm to his reputation by any defamatory matter alleged as the basis of the proceedings.

(3) The expense, including any reasonable attorney fees, that he has reasonably incurred in defending himself against the proceedings.

(4) Any specific pecuniary loss that has resulted from the proceedings.

(5) Any emotional distress that is caused by the proceedings.

(6) Punitive damages according to law in appropriate cases.

42 Pa.C.S. § 8353.

the nature of a demurrer were sustained. 42 Pa.C.S. § 8354(1), (2). Further, the fifth requirement of appellants' burden is met because the Gentzler complaint properly alleges damages as allowed by the pertinent statute. 42 Pa.C.S. § 8354(5).

Next, Gentzler's action must include allegations that the Doe lawsuit was instituted in a grossly negligent manner, or without probable cause, and for an improper purpose. 42 Pa.C.S. §§ 8351(a), 8354(3), (4). Evidently, the *Doe* lawsuit against Gentzler was brought under two theories: lack of informed consent and negligence. The informed consent action was brought against Gentzler, who is not a surgeon, on the theory that Gentzler breached a duty to Doe to inform him of the risks of the use of blood products during surgery. Atlee's second theory in the *Doe* action was an independent claim of negligence, that Gentzler improperly "ordered" and "administered" tainted blood products to *Doe.* Atlee argues on appeal that he had probable cause to maintain the *Doe* lawsuit against Gentzler under these theories, and that the instant wrongful use of civil proceedings action was properly dismissed.

In order for Gentzler to state a cause of action for wrongful use he must, *inter alia,* allege that Atlee brought the *Doe* suit without probable cause. The Act defines probable cause as follows:

A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so *if he reasonably believes in the existence of the facts upon which the claim is based, and* either:

(1) *Reasonably believes that under those facts the claim may be valid under the existing or developing law;*

(2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure

of all relevant facts within his knowledge and information;[4] or

 (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.[5]

42 Pa.C.S. § 8352 (emphasis added). A party has probable cause to bring an action when he "reasonably believes" in the facts on which it is based *and* in the viability of the legal theory under which it is brought. 42 Pa.C.S. § 8352(1).[6]

 The existence of probable cause is a matter of law for the court to decide and is a proper objection for a defendant, in this case Atlee, to raise on preliminary objections. "[W]hat constitutes probable cause and whether it exists under an

**4.** This part of the probable cause definition is irrelevant since Gentzler's action is brought against counsel and not against John Doe himself.

**5.** Because in his effort to oppose Gentzler's allegations of lack of probable cause, Atlee relies upon his alleged belief that the action was valid under developing law (42 Pa.C.S. § 8352(1)), we need not address this additional part of the definition of probable cause. However, we note that, as a practical matter, our discussion *infra* of the "improper purpose" element of a wrongful use of civil proceedings action seems to overlap with this last prong of the probable cause definition. 42 Pa.C.S. § 8351(a)(1).

**6.** The liability of a lawyer for the tort of wrongful use has been further described in comment (d) to Restatement (Second) of Torts § 674:

 An attorney who initiates a civil proceeding on behalf of his client[,] ... even if he has no probable cause and is convinced that his client's claim is unfounded, ... is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim.... An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

 *If, however, the attorney acts without probable cause for belief in the possibility that the claim will succeed, and for an improper purpose,* as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, *he is subject to the same liability as any other person.*

(Emphasis added). *See also Kelly–Springfield Tire Co., supra* at 306, 596 A.2d at 870; *Hart v. O'Malley*, 436 Pa.Super. 151, 647 A.2d 542, 550 (1994).

admitted or clearly established set of facts are questions of law for the court to determine." *Dietrich Ind., Inc. v. Abrams, supra* (citing *Morphy v. Shipley,* 351 Pa. 425, 431, 41 A.2d 671, 674 (1945)).

We first address the informed consent allegation in the *Doe* complaint. If Atlee had a reasonable belief in the facts on which the claim was based and in the validity of the claim under existing or developing law, then Gentzler's cause of action for wrongful use cannot succeed. On the other hand, if Atlee lacked reasonable belief in the facts alleged or the validity of the claim under existing or developing law, and made the claim for an improper purpose, then Gentzler's cause of action for wrongful use may proceed. We conclude that Gentzler has asserted sufficient facts in his complaint for the judge to determine that Gentzler stated a cause of action for wrongful use of civil proceedings.

■ Our supreme court has consistently held that a physician performing a surgical procedure must obtain informed consent from the patient. Without such consent, a "touching" is an unauthorized, technical battery, and an actionable tort. *Gray v. Grunnagle,* 423 Pa. 144, 223 A.2d 663 (1966); *Smith v. Yohe,* 412 Pa. 94, 194 A.2d 167 (1963). In Pennsylvania, only surgeons who actually perform the operative procedures have the duty to warn patients of risks and thus obtain informed consent.[7] *Boyer v. Smith,* 345 Pa.Super. 66, 497 A.2d 646 (1985). Gentzler was not one of Doe's surgeons, and therefore cannot be held liable for a "battery."

Atlee concedes the present limitation in the law of informed consent. However, he argues that he had probable cause to assert Gentzler's liability for failure to inform *Doe* of the risks because he was attempting to develop the law. He was urging that informed consent be analyzed under a negligence, not a

7. In determining whether a patient's consent is "informed," the standard is whether the physician disclosed all those facts, risks and alternatives that a reasonable person in the situation which the physician knew or should have known to be the plaintiff's would deem significant in making a decision to undergo the recommended treatment. *Cooper v. Roberts,* 220 Pa.Super. 260, 268, 286 A.2d 647, 651 (1971).

battery, theory, thereby making doctors other than the ones performing the surgery, or doing the "touching," subject to liability. Atlee insists that the Doe action against Gentzler was based on a good faith attempt to change the existing law regarding informed consent. Therefore Atlee argues he acted with probable cause. 42 Pa.C.S. § 8352(1).

While we recognize that members of the superior court have questioned the wisdom of continuing to analyze informed consent in the context of battery,[8] the Pennsylvania Supreme Court has consistently upheld the battery analysis.

**8.** *See, e.g., Stover v. Association of Thoracic & Cardiovascular Surgeons,* 431 Pa.Super. 11, 635 A.2d 1047, 1054 n. 6 (1993) (there is "a degree of artificiality in creating a distinction which limits the touching required for actionable informed consent to be the surgical cut"); *Wu v. Spence,* 413 Pa.Super. 352, 605 A.2d 395, 397 (1992), *alloc. granted,* 533 Pa. 613, 618 A.2d 402 (1992), *dismissed as improvidently granted,* 534 Pa. 309, 632 A.2d 1294 (1993) ("a patient's decision to undergo drug therapy should be no less informed than a decision to undergo surgery"); *Levenson v. Souser,* 384 Pa.Super. 132, 557 A.2d 1081, 1086 (1989), *alloc. den.,* 524 Pa. 621, 571 A.2d 383 (1989) ("to analyze a physician's failure adequately to inform a patient of the possible consequences of a medical procedure under the rubric of the law of battery is illogical"); *Malloy v. Shanahan,* 280 Pa.Super. 440, 421 A.2d 803 (1980) (Hoffman, J., dissenting) (the battery theory of informed consent requires "absurd distinctions" between methods of drug administration). Indeed, the battery analysis has led to rather anomalous results in certain types of informed consent actions, especially where advanced technology and "hybrid" medical treatments blur the line between surgical and non-surgical procedures. For example, our law does not support an informed consent cause of action in situations where ongoing therapeutic treatment with drugs produces adverse consequences, regardless of the method of administration. *Boyer v. Smith,* 345 Pa.Super. 66, 497 A.2d 646 (1985) (ten day regimen of oral capsules for leg pain); *Malloy v. Shanahan, supra* (ongoing oral antibiotic treatment prescription). The informed consent action is no more viable because the medical procedure is a "hybrid" treatment involving a "touching," but not surgery. *Wu v. Spence, supra,* 413 Pa.Super. 352, 605 A.2d 395 (no informed consent action for intravenous transfusion of antibiotics).

We are also aware of a recent case relied upon by Atlee to support his position, *Jones v. Philadelphia College of Osteopathic Medicine,* 813 F.Supp. 1125 (E.D.Pa.1993), wherein the federal district court held that blood transfusions during a surgical procedure must be accompanied by informed consent. In that case, the plaintiff contracted HIV after he received blood products during back surgery. The court allowed plaintiff's informed consent action to proceed against his "primary treating physician," who also advised plaintiff to undergo surgery and, most significantly, was the *attending physician during the operation.*

In fact, there is no question that the battery theory continues to control this area of the law. *See Hoffman v. Brandywine Hosp.,* 443 Pa.Super. 245, 661 A.2d 397 (1995) (patient who contracted AIDS through blood transfusion did not have informed consent cause of action; transfusion occurred several hours after surgery, not during surgery, and therefore surgeon did not have duty to obtain informed consent). The supreme court has refused to hear appeals from superior court decisions that expressly question the battery analysis, and instead has confirmed the viability of this law of informed consent in its recent decision in *Moure v. Raeuchle,* 529 Pa. 394, 404 n. 8, 604 A.2d 1003, 1008 n. 8 (1992) ("tort founded upon lack of informed consent is an intentional tort, i.e., a battery, and issue of negligence is not germane"). *See also Dible v. Vagley,* 417 Pa.Super. 302, 612 A.2d 493 (1992), *app. den.,* 535 Pa. 619, 629 A.2d 1380 (1993) (since radiation treatments did not involve surgery, physician not liable for failing to obtain informed consent prior to administering them); *Foflygen v. Zemel,* 420 Pa.Super. 18, 615 A.2d 1345 (1992), *alloc. den.,* 535 Pa. 619, 629 A.2d 1380 (1993) (informed consent cause of action must be analyzed under battery theory); *Friter v. Iolab Corp.,* 414 Pa.Super. 622, 607 A.2d 1111 (1992) (same); *Keech v. Mead Johnson & Co.,* 398 Pa.Super. 329, 580 A.2d 1374 (1990) (same).

Although Atlee argues that he was invited by the suggestions in decisions critical of the battery analysis to make an effort to establish a negligence analysis for the law of informed consent, and even if we were to concede for the sake of argument that the law in this area is ripe for change, the facts of the *Doe* case do not provide support for such a claim. Assuming *arguendo* that Atlee was attempting to hold Gentzler liable for failure to inform Doe of certain risks on negligence principles, the *Doe* complaint did not make out a proper claim against Gentzler. The facts alleged in the *Doe* complaint do not establish a duty to inform on the part of Gentzler, and further do not provide a causal connection between Gentzler's failure to warn and Doe's injuries.

Atlee's theory, according to the facts alleged, would have been that a physician (Gentzler) is liable for harm caused by a patient's (Doe's) surgery after the physician refers the patient to a second physician, who performs diagnostic tests, and based on the results of these tests, the second physician refers the patient to other physicians (Purdy and Lundy) who recommend an invasive surgical procedure, who obtain consents and perform the operation.

Atlee cites no law to support imposition of negligence liability on the first doctor, Gentzler, under such remote circumstances. Gentzler's treatment of Doe was simply too remote to establish negligence in the context of informed consent or even under a traditional negligence theory. Our recent decision in *Shaw v. Kirschbaum*, 439 Pa.Super. 24, 653 A.2d 12 (1994), is instructive. It holds that neither an informed consent nor a negligence action would lie against a cardiologist who advised surgery, and even undertook financial and travel arrangements for his patient, where the cardiologist was not the surgeon. Under the facts as alleged in Gentzler's complaint, we conclude that Gentzler properly pleaded that Atlee lacked probable cause for bringing the *Doe* lawsuit on the theory of informed consent.[9]

Doe's complaint against Gentzler was not only based on a claim of liability for lack of informed consent, but also included a count based on an independent theory of negligence. We conclude that Gentzler presented allegations that Atlee brought the underlying negligence counts in the *Doe* lawsuit in a grossly negligent manner or without probable cause and for an improper purpose sufficient to sustain his action for wrongful use of civil proceedings.

According to Gentzler's complaint, the allegations of which we take as true, Atlee obtained Doe's medical records from Lancaster General Hospital, including the surgical consents

**9.** We note that Atlee's argument that he was attempting to change the law in the *Doe* case is further belied by the fact that after the completion of the *Doe* action at the trial level Atlee failed to appeal Gentzler's dismissal to this court and then to the supreme court, the only court with the power to effect any change at all.

obtained by Drs. Lundy and Purdy. Atlee then filed a writ of summons and complaint against Gentzler, in which he alleged, *inter alia,* that Gentzler: a) ordered the administration of blood products that were contaminated with HIV to Doe; b) ordered the administration of blood products which had not been properly tested for HIV; c) failed to "assure that the blood products he administered to his patient were properly tested"; d) failed to advise Doe that he had the option of autologous or directed donation; and e) failed to advise Doe of the risks which autologous or directed donation of blood products would minimize or eliminate. According to Gentzler's complaint, at the time Atlee prepared and filed the *Doe* action with these allegations, Atlee had actual knowledge that Gentzler had *not* ordered the administration of blood products to Doe. Atlee made these negligence allegations against Gentzler despite this known factual inaccuracy. Therefore, the allegations of Gentzler's wrongful use complaint, when taken as true, show that Atlee could not have "reasonably believed" in certain of the facts on which the claim was based. 42 Pa.C.S. § 8352.

Thus, the allegations of Gentzler's complaint against Atlee, if true, establish that Atlee filed the *Doe* lawsuit with several known factual inaccuracies regarding Gentzler's involvement in Doe's care. The *Doe* complaint asserts that Gentzler actually administered blood products to Doe, or ordered their administration. The medical records available to Atlee prior to the filing of the action allegedly made clear to Atlee that Gentzler did not do so. Therefore, the allegations in the *Doe* lawsuit as to Gentzler's negligence lacked probable cause or were made with gross negligence. Our rationale regarding the remoteness of Gentzler's treatment to the harm Doe suffered as stated in our discussion of Gentzler's cause of action based on informed consent is equally applicable to Atlee's allegations of negligence against Gentzler. *See Shaw v. Kirschbaum, supra,* 439 Pa.Super. 24, 653 A.2d 12.

Gentzler further supports his claim that Atlee filed the *Doe* suit against him without probable cause or with gross negligence by stating in his complaint that before and after he filed

preliminary objections in the *Doe* suit his lawyer wrote to Atlee, advising him that the facts alleged in the *Doe* complaint were inaccurate and that there was no legally cognizable cause of action against Gentzler. Atlee, however, continued the action against Gentzler until the preliminary objections that Gentzler filed were sustained and Gentzler was dismissed. No appeal was filed after the completion of the *Doe* case. Gentzler alleges that the initiation and continuation of the *Doe* action were without probable cause, and intended to harass or maliciously injure Gentzler and his reputation. We find that, at the very least, the allegations in Gentzler's complaint make out a claim of gross negligence on the part of Atlee, and at worst, a lack of probable cause.

 To summarize, we note that an action for wrongful use of civil proceedings will be upheld if the trier of fact could reasonably conclude that the defendant initiated the underlying lawsuit without probable cause. *Ludmer v. Nernberg,* 520 Pa. 218, 223, 553 A.2d 924, 926 (1989). The trial court decided as a matter of law that Atlee had the requisite probable cause in suing Gentzler. The judge made this determination despite the fact that he had previously dismissed Gentzler from the *Doe* lawsuit because Doe had "plead [sic] no facts which would support a duty on Dr. Gentzler under the circumstances of this case." We hold that the trial court erred in its determination that Atlee had probable cause for the *Doe* lawsuit, since Gentzler properly alleged that Atlee did not reasonably believe that Doe's claim was valid under the facts pleaded, and the action was not supported by the law. 42 Pa.C.S. § 8352(1). Since the procedural posture of the case was Atlee's demurrer to Gentzler's complaint for wrongful use, the court need not assess the merits of the case but is required only to view the facts as alleged by Gentzler to determine whether a cause of action has been asserted. *Shaffer v. Stewart, supra,* 326 Pa.Super. 135, 473 A.2d 1017.

Finally, we must decide whether Gentzler's complaint contains allegations that, if true, would support a finding that Atlee filed the *Doe* action for an improper purpose—that is, "primarily for a purpose other than that of securing the

proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based." 42 Pa.C.S. § 8351(a)(1). Gentzler has alleged that "Atlee had actual knowledge that Dr. Gentzler had not ordered the administration of blood products to John Doe," and that Atlee knew that Gentzler "had no legal duty to advise John Doe of the risk of blood products that may be administered by surgeons." We also must consider the pleaded facts that Gentzler's counsel made several attempts to communicate these errors to Atlee, and Atlee had numerous opportunities after filing the lawsuit to review and discontinue the underlying action against Gentzler.

We have previously held that the plaintiff in a wrongful use of civil proceedings action need not obtain the defendant's outright "confession" of improper purpose; an improper purpose may be inferred where the action is filed without justification. *Ludmer v. Nernberg*, 433 Pa.Super. 316, 640 A.2d 939 (1994) (attorney's filing of action without client's consent implies improper purpose); *Shaffer v. Stewart, supra*, 326 Pa.Super. 135, 473 A.2d 1017 (evidence existed from which jury could infer improper purpose). Moreover, Gentzler alleged facts of improper purpose, namely to harass or maliciously injure Gentzler, and unnecessarily to delay and increase the cost of litigation. The facts alleged in the Gentzler complaint tend to show more than mere negligence by Atlee in filing the *Doe* action against Gentzler, and state facts of improper purpose sufficient to withstand the demurrer. *Compare Hart, supra* (mere negligence insufficient to make cause of action for wrongful use of civil proceedings). We hold that the final prong of the Act, requiring an improper purpose, has been met. 42 Pa.C.S. § 8351.

We therefore reverse the trial court's ruling on Atlee's preliminary objections to Gentzler's complaint. We find that the complaint, when viewed under the proper standard, makes out a cause of action for wrongful use of civil proceedings against appellees. *See Kelly–Springfield Tire Co., supra*, 408 Pa.Super. 301, 596 A.2d 867. We recognize the difficulty in the policy decision to impose liability in these cases, especially in light of the importance of case-instigated change in the law. Our "finding should not be construed as disfavoring legitimate

attempts to change existing law. Where long-standing case law is contrary to a party's position, there may be a reasonable basis for arguing the re-evaluation of that law." *Estate of Liscio*, 432 Pa.Super. 440, 638 A.2d 1019, 1022 (1994). However, we hold that this is not such a case. We need not endorse the protection of lawyers and litigants who intentionally cast their lawsuit net too wide, perhaps in the hope of encouraging settlements in baseless lawsuits against defendants who do not belong in the case.

Reversed and remanded. Jurisdiction relinquished.