J-A31010-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LAUREN HOPE KANE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN SCHATZ AND JONATHAN | : | No. 3141 EDA 2016 |
| KAPLAN AND L. KENNETH CHOTINER | : | |
| AND ANTHONY DEMICHELE AND | : | |
| JEFFREY BRIEN AND JOHN INNELLI | : | |
| AND JOHN MCNAMARA | : | |

Appeal from the Order August 11, 2016
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  September Term 2013 No. 3691

BEFORE:   PANELLA, J., OLSON, J., and STEVENS*, P.J.E.

MEMORANDUM BY PANELLA, J.                    **FILED SEPTEMBER 11, 2018**

Lauren Hope Kane, Esquire, appeals from the order entered in the Philadelphia County Court of Common Pleas, granting summary judgment in favor of Steven Schatz, Esquire, Jonathan Kaplan, Esquire, L. Kenneth Chotiner, Esquire, Anthony DeMichele, Esquire, Jeffrey Brien, Esquire, John Innelli, Esquire, and John McNamara, Esquire (collectively, Appellees) in this action for wrongful use of civil proceedings. We affirm.

The relevant facts and procedural history of this case are as follows:

[Appellant] is an attorney. [Appellant's] husband, Marty Feierstein ("Feierstein") at all times relevant hereto, was involved in the music industry. In 2004, Feierstein entered into a Recording Contract with a musician known as Link Wray. Under the terms of the Recording Contract, Wray was required to provide Feierstein with songs that Feierstein would license and distribute for sale. In

_____

* Former Justice specially assigned to the Superior Court.

addition to the Recording Contract, Feierstein and Wray also entered into a Loan Agreement whereby Feierstein lent funds and equipment to Wray so that Wray could complete the recordings. Wray gave Feierstein power of attorney on Wray's behalf to collect certain royalties. The Power of Attorney was later assigned to [Appellant] giving [Appellant] the authority to collect the royalties owed to Wray.

Trial Court Opinion, filed 8/11/16, at 1-2.

Wray did not complete the recordings, and Feierstein filed an action against Wray and his family for breach of contract. The Wrays did not file an answer. Appellee Steven Schatz, one of Feierstein's then-representatives, prepared a default judgment which was entered against the Wrays. Appellee L. Kenneth Chotiner, one of Schatz's associates, performed 11.5 hours of work on the Feierstein file. A third attorney, Oscar Schermer, also contributed work at that stage, but is not part of the present litigation. Following the entry of default judgment, Appellee Jonathan Kaplan began representing Feierstein.

The court held an assessment of damages hearing, and Kaplan presented testimony and evidence. The court ultimately issued a finding that Feierstein did not sustain his burden of proving damages, as he failed to present credible evidence of Wray's failure to repay loans, return recording equipment, pay various bills, or of Feierstein's lost profits. Kaplan filed post-trial motions challenging the verdict, which the court denied. Thereafter, Kaplan withdrew as counsel. Feierstein appealed the verdict, which was affirmed by this Court.

Throughout the proceedings, Appellant sent Feierstein's attorneys letters with directives to pursue certain courses of action, including which

- 2 -

experts to hire, assets to pursue, and motions to file. She also gave counsel instructions to communicate solely with her, rather than Feierstein, and referred to Feierstein as her client.

Following the failed appeal, Feierstein filed a professional negligence complaint against Appellees Kaplan, Chotiner, and Schatz. In response, Appellee John Innelli, who represented Schatz, filed a joinder complaint against Appellant, which sought contribution and indemnification. Appellees Anthony DeMichele and Jeffrey Brien, representing Kaplan, also filed a joinder complaint against Appellant, alleging Appellant's negligence in negotiating and drafting the underlying recording contract and agreements, and throughout subsequent litigation. Appellee John McNamara and Attorney Marc Bogutz, representing Chotiner, filed a cross-claim against Appellant, alleging professional negligence in her dealings with the Wray contract and subsequent litigation.

After negotiations, Feierstein agreed to release Chotiner from the malpractice action, and the court granted Chotiner's motion for summary judgment. Subsequently, Appellant filed motions for summary judgment in response to the joinder complaints from Kaplan and Schatz. The court granted the motions, and dismissed the joinder complaints. Following arbitration and an appeal, Feierstein settled his malpractice actions against Kaplan and Schatz.

Appellant filed this **Dragonetti**[1] action against Kaplan, Chotiner, and Schatz. The basis for her wrongful use of civil process claims were Kaplan and Schatz's joinder complaints, and Chotiner's cross-claim. Following preliminary objections, Appellant amended her complaint to include Innelli, McNamara, Brien, DeMichele, and Bogutz.

Chotiner, McNamara, and Bogutz filed motions for summary judgment, which the court granted. Appellant then filed motions for partial summary judgment against all remaining parties. In turn, those Appellees filed cross-motions for summary judgment. The court denied Appellant's motions, and granted the summary judgment motions of Appellees. The court dismissed Appellant's complaint with prejudice. Thereafter, Appellant filed a notice of appeal.

Preliminarily, we are compelled to address procedural issues stemming from Appellant's error-riddled notice of appeal and appellate brief. Appellant endeavored to appeal from the orders entered on January 6, 2016, granting Chotiner's motion for summary judgment, and February 19, 2016, granting McNamara's motion for summary judgment.[2] Appellant filed an "Application

---

[1] 42 Pa.C.S.A. § 8351.

[2] The February 19, 2016 order also granted the motion for summary judgment filed by Attorney Bogutz, who previously represented Appellee Chotiner. Appellant listed Bogutz only as counsel for Chotiner in her notice of appeal, and not as a defendant. Consequently, Bogutz is not listed on the caption of this appeal, and has not filed a brief. In a footnote within her reply brief, Appellant nevertheless asks this Court to overturn the order granting

for Determination of Finality" of those orders; the court denied it, stating that the orders were interlocutory, and an appeal would be unlikely to resolve the remaining issues in the case.

Following the order granting summary judgment to the remaining Appellees, entered on August 11, 2016, Appellant filed a notice of appeal. Appellant's notice of appeal does not state her intention to appeal from the orders entered on January 6, 2016, and February 19, 2016. Nevertheless, the notice of appeal lists Chotiner and McNamara as defendants in the case. Chotiner and McNamara now ask that we quash Appellant's appeal as untimely filed.

Appellants are strongly discouraged from filing one notice of appeal from multiple orders. *See K.H. v. J.R.*, 826 A.2d 863, 870 (Pa. 2003). However, where the appeal stems from a single complaint on one docket, and the parties challenged multiple orders during the course of litigation, "appellate courts have not generally quashed appeals, provided that the issues involved are nearly identical, no objection to the appeal has been raised, and the period for appeal has expired." *Id*. (citation omitted). And we note, the"[f]ailure of

_____

summary judgment in favor of Bogutz. Appellant's request is outrageous. Pa.R.A.P. 105 dictates we liberally construe the Rules "to secure the just, speedy and inexpensive determination of every matter to which they are applicable." Evaluating the merits of Appellant's claim would be anything but. Appellant's failure to properly appeal the dismissal of Attorney Bogutz from the action cannot be cured by her inadequate and belated attempts to challenge that ruling on appeal.

an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal[.]" Pa.R.A.P. 902.

Appellant previously attempted to appeal the orders granting summary judgment to Appellees Chotiner and McNamara, but was unable to do so, as those orders were interlocutory. Appellant's first opportunity to appeal was after the order granting summary judgment to the remaining Appellees was entered. **See** Pa.R.A.P. 341(b) (explaining a final order is one that disposes of all claims and all parties). Appellant timely appealed within 30 days of that order. Though Appellant failed to indicate she was also challenging the previously entered order granting Chotiner and McNamara's motions for summary judgment, both were listed as defendants in the notice of appeal, and each filed a brief addressing the substantive issues raised. While Appellant's notice of appeal is certainly flawed, we decline to quash her appeal with respect to Appellees Chotiner and McNamara.

Nevertheless, the argument portion of Appellant's brief wholly fails to address the February 19, 2016 order granting Appellee McNamara's motion for summary judgment. While she includes a copy of the order, pursuant to Pa.R.A.P. 2111(a)(2), she presents *no* challenge to the order granting McNamara's motion in her statement of questions involved or in the text of her argument. This is, as Appellant so frankly notes in her reply brief, "an error." Appellant's Reply Brief, at 24. Unfortunately for Appellant, it is a fatal one.

She attempts to remedy this defect by requesting, in her reply brief, that this Court overturn the order granting summary judgment in favor of Appellee McNamara. Pennsylvania Rule of Appellate Procedure 2113, which governs reply briefs, "does not sanction the use of Reply Briefs to raise new issues." ***Bishops, Inc. v. Penn Nat. Ins.***, 984 A.2d 982, 997 (Pa. Super. 2009) (citations omitted). "A reply brief may not be used as an opportunity to raise additional issues on appeal." ***Id***., at 998 (citation omitted). Thus, we find Appellant has waived any argument pertaining to Appellee McNamara.

Turning to Appellant's preserved issues, we review challenges to the entry of summary judgment as follows:

> [We] may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.
>
> In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. ***See*** Pa.R.C.P., Rule 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the nonmoving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non-moving party to adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will review the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

***E.R. Linde Constr. Corp. v. Goodwin***, 68 A.3d 346, 349 (Pa. Super. 2013) (citation omitted).

In Pennsylvania, a person may be liable for wrongful use of civil proceedings if that person initiates or continues civil proceedings against another, while acting "in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based, [and] the proceedings have terminated in favor of the person against whom they are brought." 42 Pa.C.S.A. § 8351(a). The plaintiff bears a heavy burden in sustaining a **Dragonetti** claim. He must prove: the defendant initiated or continued civil proceedings against him; the proceedings terminated in his favor; the defendant did not have probable cause for the action; the defendant's primary purpose in bringing the action was not to secure proper discovery, joinder of parties, or adjudication of the claim on which the proceedings were based; and he has suffered damages. **See** 42 Pa.C.S.A. § 8354.

We begin by evaluating Appellant's claim that the court erred in granting summary judgment in favor of Chotiner. According to Appellant, the issue of whether the underlying cross-claim terminated in her favor should have been presented to a jury.

The parties agree that Chotiner filed a cross-claim against Appellant in the Feierstein malpractice action. In it, Chotiner denied Feierstein's malpractice allegations, but stated that if he was found liable, Appellant should be held fully or partially responsible. The cross-claim accused Appellant of negligence in drafting the initial recording contract and loan agreement with

Link Wray. It also purported Appellant acted negligently in formulating strategy for the litigation against the Wrays. Chotiner then filed a motion for summary judgment in the Feierstein case. Feierstein filed a response opposing the motion, stating he would agree to withdraw claims against Chotiner, and would prefer Chotiner be voluntarily dismissed. The court granted Chotiner's motion for summary judgment, and he was dismissed from the malpractice action.

Appellant asserts Chotiner's cross-claims mirror those in the joinder complaints of Kaplan and Schatz. Appellant claims that because the trial court found in her favor on the summary judgment motions opposing joinder that she filed against Kaplan and Schatz, it would have also found in her favor on Chotiner's cross-claims.

"Civil proceedings may be terminated in favor of the person against whom they are brought by the favorable adjudication of the claim by a competent tribunal." **Keystone Freight Corp. v. Stricker**, 31 A.3d 967, 972 (Pa. Super. 2011) (citation omitted). "Generally, when considering the question of 'favorable termination' in a wrongful use of civil proceedings case, whether a withdrawal or abandonment constitutes a favorable, final termination of the case against [whom] the proceedings are brought initially depends on the circumstances under which the proceedings are withdrawn." **Clausi v. Stuck**, 74 A.3d 242, 246 (Pa. Super. 2013) (citations omitted).

Here, Chotiner was dismissed from the malpractice action by the court's order granting his motion for summary judgment. Chotiner's cross-claim

against Appellant was derivative, as it was conditional on a finding by the court that Chotiner was negligent in his representation of Feierstein. The court's order granting Chotiner's motion for summary judgment against Feierstein meant Chotiner's cross-claim was no longer viable. Though Appellant may believe that Chotiner's cross-claim, if evaluated, would have also been dismissed, Chotiner was dismissed from the malpractice action before any such evaluation could occur. Appellant has failed to prove Chotiner's cross-claim against her terminated in her favor. Appellant cannot prove her wrongful use of civil proceedings claim against Chotiner without such a showing. Consequently, the court properly granted Chotiner's motion for summary judgment in Appellant's *Dragonetti* action.

Turning to Appellant's claims against Appellees Kaplan, Schatz, Innelli, Brien, and DeMichele, we evaluate Appellant's assertion that Appellees had no probable cause for bringing the joinder complaints against her in the Feierstein action.

"A party has probable cause to bring an action when he reasonably believes in the facts on which it is based *and* in the viability of the legal theory under which it is brought." *Gentzler v. Atlee*, 660 A.2d 1378, 1382 (Pa. Super. 1995) (internal quotation marks and citation omitted; emphasis in original). An attorney must not intend merely to harass the other party by initiating litigation. *See* 42 Pa.C.S.A. § 8352.

However, even where a party possesses probable cause, a *Dragonetti* action may still be sustained by a showing of gross negligence. *See Keystone*

*Freight Corp.*, 31 A.3d at 973. "Gross negligence is defined as the want of even scant care and the failure to exercise even that care which a careless person would use." *Id*. (citation omitted).

In its opinion, the trial court adeptly highlighted the profusion of facts supporting its finding that Appellees had probable cause for filing joinder complaints against Appellant. Wray authorized Appellant to collect royalties owed and pursue copyright and trademark matters in his name. *See* Appellant's Motion for Summary Judgment, filed 4/11/16, Exhibit 3, "Agreement for Payment of Loan"; Kaplan and Schatz's Response to Appellant's Motion for Summary Judgment, filed 5/16/16, Exhibit D. Wray thereafter thanked Appellant and Feierstein for "talking through the contract" with him, and assured them he would do as *they* instructed. *Id*. Appellant's own motion for summary judgment includes letters she wrote to Feierstein's various legal representatives, asserting that she represented Feierstein. Appellant wrote letters to Schatz's firm, describing herself as involved in a professional capacity on Feierstein's behalf. *See* Appellant's Motion for Summary Judgment, filed 4/11/16, Exhibit 5. Appellant later described her role in the case to Kaplan as follows:

> As you are certainly aware from my letters to you, I represent [Feierstein] with regard to his issues with you and your representation of him in the Link Wray Case.
>
> Consequently, I find your effort to contact him directly, both disrespectful to me as his counsel as well [as] a violation of the ethical rules. There is no question that you know it is fundamental that you should not be contacting an individual directly when he

or she is represented by counsel. However from your conduct thus far, apparently you feel that you are above these rules. If these rules are not followed, unfortunately, there will be consequences to pay.

*Id*.

Appellant exchanged more letters thereafter with Kaplan, directing him to pursue certain assets from Mr. Wray's estate. The letters were all written on Appellant's business letterhead, with her legal office's name and address on it. Incredibly, in her appellate brief Appellant describes these letters as "classic red herrings" to goad the attorneys into action. Appellant's Brief at 45. Appellant avers the recipients were aware she was merely acting in an advisory capacity to Feierstein. We disagree.

The evidence demonstrates Appellant held herself out to be one of Feierstein's lawyers, though she was not an attorney of record. Appellant was intimately involved in the underlying litigation, as shown by the letters she includes as exhibits in her motion for summary judgment. Far from red herrings, these letters conveyed Appellant's close involvement with the case, and her expectations that Appellees would take particular actions in the case. The missive quoted above goes so far as to implicitly threaten Kaplan should he choose not to comply with Appellant's directives. Appellant's complete immersion in the Wray litigation provided Appellees sufficient probable cause for filing joinder complaints against her.[3]

---

[3] Though she includes relevant law in her appellate brief, Appellant does not argue Appellees were grossly negligent in filing the joinder complaints. Therefore, we will not address that issue.

To the extent Appellant argues Appellees were collaterally estopped from showing probable cause, due to the court's order granting her motion for summary judgment on Kaplan and Schatz's joinder complaints in the malpractice case, Appellant confuses the elements of a ***Dragonetti*** action. Appellant's success on those motions demonstrates the action terminated in her favor. It does not, however, prove the separate element of probable cause. By Appellant's logic, a wrongful use of civil proceedings claim could be proven simply by presenting evidence of any unsuccessful previous civil complaint. Appellant's claim is premised on a misapprehension of the law. Consequently, she is due no relief on this issue.

Finally, Appellant posits the trial court prematurely ruled on Appellees' motions for summary judgment. She complains she was unable to conclude discovery on "the reasons why Kaplan sued [her]" before the court granted summary judgment in favor of Appellees. Appellant's Brief, at 70. In doing so, Appellant ignores her own motion for summary judgment on the issue of liability, filed several months earlier. Appellant's motion requested the court rule in her favor on the liability issue because Appellees lacked probable cause to join her as a defendant in the malpractice action.

A motion for summary judgment represents to the court that all relevant discovery has been completed. ***See*** Pa.R.C.P. 1035.2. Appellant filed her motion for summary judgment several months before the discovery deadline. Appellant's complaint that she was unable to conclude discovery on the issue of probable cause is belied by her own, earlier motion for summary judgment

on that issue. Moreover, as the trial court notes in its opinion, Appellant's basis for alleging incomplete discovery was an inadvertently disclosed email that Appellant was repeatedly told to return. Appellant's final issue lacks merit. Accordingly, we affirm the trial court's order granting summary judgment.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/18