

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-2006

# Finney v. Royal SunAlliance

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4426

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Finney v. Royal SunAlliance" (2006). *2006 Decisions.* Paper 824.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/824

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-4426

———————

IN RE: DANIEL R. FINNEY,
Debtor

ESTATE OF DANIEL FINNEY
d/b/a Finney Construction,
Appellant

v.

ROYAL SUNALLIANCE INSURANCE COMPANY
a/k/a ROYAL INSURANCE COMPANY OF AMERICA;
PATRICK J. LOUGHNEY

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-01086)
District Judge: Honorable Arthur J. Schwab

———————

Submitted Under Third Circuit LAR 34.1(a)
May 18, 2006
Before: RENDELL and VAN ANTWERPEN, <u>Circuit</u> <u>Judges</u>,
and ACKERMAN*, <u>District</u> <u>Judge</u>.

(Filed June 28, 2006)

———————

———————

* Honorable Harold A. Ackerman, Senior District Judge for the District of New Jersey,
sitting by designation.

OPINION OF THE COURT

RENDELL, *Circuit Judge*.

The Estate of Daniel Finney ("Finney") appeals the District Court's grant of summary judgment in favor of defendants Royal SunAlliance Insurance Company ("Royal") and Patrick Loughney ("Loughney") on Finney's claims of wrongful use of civil proceedings and abuse of the legal process. We agree with the District Court's analysis that Finney failed to offer evidence of various required elements of each of his claims, and we accordingly will affirm.

## I.

Fire destroyed Finney's newly-remodeled house and barn in Elizabeth, Pennsylvania in June 2000. The house was sparsely furnished, rarely occupied, and had been on the market prior to the fire. At the time, Finney, a general contractor by trade, was experiencing financial difficulties: he was behind on mortgage payments for the Elizabeth home and for another rental property, and he owed taxes to the IRS. After the fire, Finney made a claim to Royal based on the homeowner's insurance policy he held with them. During its subsequent investigation, Royal discovered that 1) the June 2000 fire was caused by arson and that Finney was (temporarily) a suspect in the criminal investigation, 2) Finney had made a previous claim to another insurer based on a November 1996 fire, later determined to be arson, that destroyed one of his rental

properties, and 3) Finney failed to disclose the 1996 fire and subsequent payment of his claim on his insurance application to Royal. Considering these facts to be "red flags," Royal denied Finney's claim.

Finney filed for bankruptcy and commenced an adversary action against Royal in Bankruptcy Court[1] for breach of contract and alleged violation of 42 Pa.C.S. § 8371, which prohibited bad faith denial of insurance benefits. Loughney, who served as Royal's attorney for the majority of the bankruptcy proceeding, filed a counterclaim on behalf of Royal, asserting that Finney had committed fraud in his application and intentionally caused the June 2001 fire. The claims went to trial, and in April 2002, a jury found that: 1) Royal was liable for breach of contract; 2) Royal had not acted in bad faith; and 3) Finney had not committed fraud in his application nor had he committed arson. The jury awarded damages to Finney in the amount of $147,225.54 on his breach of contract claim, and the Court added prejudgment interest in the amount of $38,584.08.

In April 2004, Finney filed a second adversary action in Bankruptcy Court. This second action was also withdrawn to the District Court, whose ruling is the subject of this appeal. Finney's second amended complaint claimed: 1) wrongful use of civil proceedings against both Loughney and Royal under Pennsylvania's Dragonetti Act, 42. Pa.C.S. § 8351 *et seq.*, and 2) common law abuse of process against both defendants.

---

[1] The action was later withdrawn to Federal District Court for the Western District of Pennsylvania, having jurisdiction pursuant to 28 U.S.C. §157(d).

3

Both Royal and Loughney filed motions for summary judgment that were granted by the District Court. Finney appeals.

## II.

This Court has jurisdiction pursuant to 28 U.S.C. 1291. We review a grant of summary judgment de novo, applying the same test as the District Court. *MBIA Ins. Corp. v. Royal Indem. Co.,* 426 F.3d 204, 209 (3d Cir. 2005). Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of material fact is genuine only when such evidence could cause a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the non-moving party bears the burden of proof at trial, the moving party's burden may be discharged by showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The burden then shifts to the non-moving party, who "may not rest on the mere allegations or denials of the adverse party's pleadings . . . but must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P 56(e). If the adverse party does not so respond, summary judgment shall be entered against the adverse party. *Id.*

4

## III.

### A. Wrongful Use of Civil Proceedings

In Pennsylvania, the Dragonetti Act codifies the tort of wrongful use of civil proceedings. 42 Pa.C.S. § 8351 *et seq.* A person who engages in "the procurement, initiation or continuation of civil proceedings against another" may be held liable if: 1) he or she acts in a grossly negligent manner or without probable cause; and 2) he or she acts *primarily* for a purpose other than that of securing proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based, and 3) the proceedings are terminated in favor of the person against whom they were brought. *Id.* This third element is easily met, since defendants' counterclaim was resolved in plaintiff's favor.[2] We therefore turn to the first two elements to consider whether there is any genuine issue of material fact, or whether defendants were entitled to judgment as a matter of law.

Having included a "probable cause" element, the Dragonetti Act goes further to define its contours. Probable cause exists if:

---

[2] Loughney argues that because Finney's claims are merely an attempt to re-litigate the issue of whether Royal acted in bad faith, his claim is barred by collateral estoppel. Appellee Loughney's Br. at 30; App. 340a. We do not agree. In order for a claim to be barred under collateral estoppel, Pennsylvania law requires, *inter alia*, that the issue decided in the prior action be identical to the one now presented. *Rue v. K-Mart Corp.*, 713 A.2d 82, 84 (Pa. 1998). Here, Finney does not attempt to re-argue that Royal acted in bad faith when it denied his insurance claim; rather, Finney claims that Royal and Loughney acted for an improper purpose and without probable cause when it *filed its counterclaim*. These issues are distinct.

[A] person reasonably believes in the existence of the facts upon which the claim is based, and either:

1) Reasonably believes that under those facts the claim may be valid under the existing or developing law;

2) Believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; [or]

3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa.C.S. § 8352. As the District Court properly held, a reasonable jury could not conclude that Royal and Loughney lacked probable cause to file and pursue their counterclaim. Not only did the defendants reasonably believe that the facts could support their claim, but so did Finney's own attorney and his own expert. Furthermore, there is no question that defendants (as well as Finney's attorney) believed the counterclaim would be valid under existing law. Although Royal ultimately lost on the counterclaim, its propriety was never in question. Finney has failed to offer any specific facts to support his position that Royal and Loughney lacked a reasonable belief in the validity of the claim and the underlying facts, and therefore defendants need not satisfy either of the remaining two elements.

We now examine the second prong, improper purpose. Although a counterclaim may constitute the "continuation" of a civil proceeding and could be filed for improper purposes, we examine such claims closely, "lest a defendant be punished for nothing more

6

than defending himself or herself against a claim made by another." *Mi-Lor, Inc. v. DiPentino*, 654 A.2d 1156, 1158 (Pa. Super. Ct. 1995). Furthermore, "where an unsuccessful litigant has acted in consultation with an attorney, the legislature has made it quite difficult . . . for the successful defendant to prevail on a wrongful use of civil proceedings claim in Pennsylvania." *Am. Int'l Airways, Inc. v. Am. Int'l Group, Inc.*, 816 F.Supp. 1058, 1064 (E.D.P.A. 1993). In the end, although Royal and Loughney may have lacked sufficient proof to convince a jury to decide in their favor on their counterclaim, that did not automatically make them liable under the Dragonetti Act. *Id.* Finney offers only conjecture, no evidence, that the counterclaim was filed for an improper purpose. A reasonable jury would not disagree that the underlying suit was simply "litigation . . . unmarked by any of the varieties of outrageousness required to sustain a lawsuit under the cited statute." *Mi-Lor*, 654 A.2d at 1159. We agree with the observation of the District Court that this "is not the stuff of which 'wrongful use of civil proceedings' actions are made." *Finney v. Royal Sun Alliance Ins. Co.*, No. 04CV1086, 2005 WL 2106576, at *7 (W.D. Pa. Aug. 29, 2005).

**B.     Abuse of Process**

To recover under a theory of abuse of process, plaintiff must show that the defendant used the legal process against him in a way that constituted a perversion of that process and caused harm to the plaintiff. *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 304 (3d Cir. 2003). The claim refers to the improper use of process

during the course of the lawsuit, *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987), and applies whether or not such behavior is related to the underlying litigation, *Gen. Refractories*, 337 F.3d at 305. "'Abuse of process differs from malicious prosecution in that the gist of the tort is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself for an end other than that which it was designed to accomplish.'" *Id.* (quoting *In re Larsen*, 616 A.2d 529, 592-93 (Pa. 1992)).

Although we have recognized that parties who employed the legal process "primarily intending to increase the burden and expense of litigation to the other side" might be liable for abuse of process, we have also cautioned that such behavior must "become so lacking in justification as to lose its legitimate function as a reasonably justifiable litigation procedure." *Id.* at 308. We noted that the purpose of avoiding payment to the adverse party does not suffice to state an abuse of process claim. If that were so, any party who defended a lawsuit but eventually lost could be held liable. *Id.* at 309.

We have found abuse of process to exist where conduct has been truly abusive. In *General Refractories*, we held that an abuse of process claim would be valid where a party "intentionally withheld critical documents, ignored court orders, permitted false testimony at depositions and misrepresented facts to opposing counsel and the court." *Id.* at 301. The defendants perverted the legal process by "engag[ing] in an intentional effort

8

to obstruct legitimate discovery by using the claim of privilege" and attempting to hide critical facts and discoverable documents. *Id.* at 302. In *McGee*, the Pennsylvania Supreme Court upheld an abuse of process claim where a party filed more than ten different petitions and motions related to a workman's compensation claim, many in spite of the Court's order granting a petition to enforce judgment. 535 A.2d at 1021. Royal and Loughney's conduct has fallen far short of the behavior proscribed in these cases. Royal and its attorney filed a compulsory counterclaim, amended it, and engaged in discovery. Neither the District Court nor opposing counsel saw any reason to oppose or dismiss the counterclaim. The case properly proceeded to trial, where Royal was unable to convince the jury of its claims. We find nothing to constitute an abuse of process under these facts.[3]

**IV.**

For the foregoing reasons, we will affirm the order of the District Court.

---

[3] Contrary to Finney's assertions, we do not dismiss his claim because Royal's counterclaim was *related* to the underlying litigation; rather, we do so because he failed to offer any proof of improper purpose or perversion of the legal process.